SPENCER B. LUGASH (SBN 195666)
MARITERE CULLEN (SBN 253561)
6150 Mission Gorge Rd., Ste. 140
San Diego, CA  92120
Telephone: (619) 223-3332
Facsimile:  (619) 649-2019
sl@lugashlawcenter.com

Attorneys for Plaintiffs,
DARIO D VILLA and MARIA THERESA O, VILLA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARIO D. VILLA and MARIA THERESA O. VILLA,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A.; HSBC BANK USA, NATIONAL ASSOCIATION, as trustee for Wells Fargo Asset Securities Corporation for Mortgage Pass-Through Certificates, Series 2006-AR17; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 3:10-cv-00081-DMS-WVG<br><br>**PLAINTIFFS DARIO D. VILLA AND MARIA THERESA O. VILLA'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR, ALTERNATIVELY, TRANSFERFOR IMPROPER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ………. …………………………………………..... 4

**I.** PRELIMINARY STATEMENT …………………………………………….6

**II.** FACTS ……………………………………………………………………..…7

**III.** ARGUMENT ………………………………………………………………...9

    A. Standard of Review …………………………………………………….....9

    B. Plaintiffs Meet The Prevailing Standard Used To Determine
        Whether They Are Intended Third Party Beneficiaries ………………….9

        1. A Single Express Recitation Regarding Interested
           Parties Is Not Sufficient In Determining Intent …………………….....10

           a. The Text & Purpose of the Contract Shows Intent to
              Confer Enforceable Rights On A Third Party …………………..…11

           b. The Purpose Of The Underlying Government
              Statute Is To Benefit Homeowners ……………………….……..…12

        2. A Qualified Borrower Is Reasonable In Relying On The
           Agreement As Manifesting An Intention To Confer A
           Right On Him Or Her ……………………………………………......…13

    C. The Forum Selection Clause Should Be Disregarded Due To
        Forum Non-Conveneins …………………………………………………...15

    D. Plaintiffs Have Already Made A Proper Tender …….……………..………16

    E. Oral Contract……………………………………………………….……..17

    F. Plaintiffs Have Properly Pled Their Causes Of Action For
        Intentional And Negligent Misrepresentation …………………….…..…17

        1. Plaintiffs' Pleadings Meet The Requisite Particularity……………….17

        2. Plaintiffs' Did And Can Allege Justifiable Reliance ………………....18

        3. Plaintiffs' Did and Can Allege Justifiable Reliance ………………....19

        4. In The Alternative The Court Should Grant Plaintiffs
           Leave To Amend ……………………………………………………….19

    G. Plaintiffs' Cause Of Action For Quiet Title Should Not Be
        Dismissed ……………………………………………………………………19

      H.  Declaratory Relief …………………………………………………………..19

      I.  Injunctive Relief …………………………………………………………….19

**IV.**  CONCLUSION ……………………………………………………………….20

# TABLE OF AUTHORITIES

Cases

Azzini v. Countrywide Home Loan ……………………………………………………..…17
(S.D. Cal . Dec. 29, 2009) U.S. Dist. LEXIS 120599

Coastal Steel Corp v. Tilghman Wheelabrator Ltd. …………………………………………...15
(3rd Cir., 1983) 709 F.2d 190

Cooper v. Pickett ……………………………………………………………………………18
(9th Cir. 1997) 137 F.3d 616, 627

County of Santa Clara v. Astra, USA,Inc. ……………………………………………......9, 11
(9th Cir.2008) 540 F.3d 1094, 1101

Escobido v. Countrywide Home Loans, Inc. ……………………………………9, 10, 13, 14, 15
2009 WL 4981618 (S.D. Cal. Dec. 15, 2009)

Jacobson v. Hughes Aircraft Co. …………………………………………………………….9
(9th Cir. 1997) 105 F.3d 1288, 1292

Karlsen v. American Sav. & Loan Assn …………………………………………………...…17
(1971) 15 Cal.App.3d 112, 117

Kehr Packages, Inc. v. Fidelcor, Inc. ………………………………………………………...9
926 F.2d 1406, 1409 (3rd Cir. 1991)

Klamath Water Users Protective Ass'n v. Patterson ………………………………….9, 10
(9th Cir. 1999) 204 F.3d 1206, 1210

Net2Phone v. Superior Court ……………………………………………………………15
(2003) 109 Cal.App.4th 583

Orion Tire Corp. v. Goodyear Tire & Rubber Co. ………………………………………...…9
(9th Cir. 2001) 268 F.3d 1133, 1137

Pegram v. Herdrich ………………………………………………………………………9
(2000) 530 U.S. 211, 230, fn.10

Rendleman v. Bowen ………………………………………………………………………11
(9th Cir. 1988) 860 F.2d 1537, 1541-42

Sec'y of State for Def. v. Trimble Navigation Ltd. ……………………………………......11
(4th Cir. 2007) 484 F.3d 700, 706

The Breman v. Zapata Off-Shore Co. ……………………………………………………15
(1972) 401 U.S. 1, 92 S.Ct. 1907, 32 L.Ed. 2d 513

US. Ex. Rel. Lee v. SmithKline Beecham, Inc. ……………………………………...………18,19
(9th Cir. 2001) 245 F.3d 1048, 1052

Statutes

Fed. R. Civ. P. 8(a)(2)…………………………………………………………………...9

Fed. R. Civ. P. 9 ……………………………………………………………………….....17

Fed R. Civ. P. 9(b) …………………………………………………………………….…18

Fed. R. Civ. P. 12(b)(3) ………………………………………………………………..16

Fed. R. Civ. P. 12(b)(6) ………………………………………………………….....9

Fed. R. Civ. P. 15(a) ……………………………………………………………….…19

Emergency Economic Stabilization Act of 2008 …………………………………….……12, 13

Restatement (Second) of Contracts § 302 (1979) ……………………………………………..10

## I. **PRELIMINARY STATEMENT**

In their Motion to Dismiss, Defendants' begin their Introduction with the assertion that Plaintiffs' complaint is "among the thousands of mortgage-related complaints flooding the state and federal courts in California." Memorandum of Points & Authorities, Page 1, lines 6-7 (hereinafter cited as, MPA, 1:6-7). In fact, Plaintiffs agree and further contend that the "flooding" of mortgage-related complaints is not just limited to California, but is an epidemic around the entire country. While Defendants use calculated language to imply that many such complaints are frivolous and unwarranted, and so Plaintiffs' may be as well, the true fact is that there are huge numbers of legitimate claims against servicers and lenders who find themselves overwhelmed, with under-trained and under-staffed foreclosure departments, and who regularly commit negligent, fraudulent and unlawful acts when dealing with foreclosing on American Homeowners. Plaintiffs fall within the later group of claimants.

As a direct result of the current "housing crisis" President Obama and his administration initiated the Home Affordable Modification Program ("HAMP") in March 2009, (FAC ¶ 11) with the intent of helping as many as 3 – 4 million American homeowners avoid foreclosure. See https://www.hmpadmin.com/portal/programs/hamp.html, the U.S. government's website on HAMP.

While electing to participate in the HAMP is voluntary to loan servicers, it is a common misconception that, likewise, the procedures and directives under the HAMP are voluntary as well. This is simply not the case. As a clear analogy, providing services to homeowners under HAMP is voluntary, much as the military is voluntary. It is only voluntary until you actually volunteer. At that time you are committed to the service and cannot voluntarily choose when, if or how you will perform your duties. Likewise, servicers who choose to participate in the HAMP have no obligation to do so, however, once they do elect to be a participant they sign a contract with the government, specifically, the Federal National Mortgage Association ("Fannie Mae"). By doing so they are bound by the terms of the contract and the requirements and guidelines of the HAMP.

1   Defendants' further cite Plaintiffs' First Amended Complaint ("FAC") with regard to
2   Plaintiffs' prayer for or order to set aside the foreclosure free of any adverse interests from
3   Defendants.[1] In fact, Plaintiff's merely pray for a judgment that Plaintiffs are the owners of
4   their property in fee simple and that Defendants have no interest in the property that is adverse
5   to Plaintiffs.  This does not mean that Defendants cannot still maintain a lien on the property
6   pursuant to a deed of trust, but only that Defendants would hold no adverse title rights.
7   Plaintiffs' ultimate goal is to re-obtain title to their home, and to get declaratory relief
8   to prevent such occurrences from happening to other homeowners in the future.  In such an
9   instance it shall be up to the courts discretion to determine whether or not Defendants actions
10  reached a level of a negligence, fraud or unfair practices to warrant the removal of their loan in
11  part or in its entirety.  In the alternative, Plaintiffs' would seek monetary damages for
12  Defendants wrongful actions.

## II. **FACTS**

As a result of economic conditions and family medical issues, prior to December 2008 Plaintiffs became unable to make their full mortgage payment.  FAC ¶ 8.  On, or about, April 13, 2009, Defendant Wells Fargo, N.A. (hereinafter "Wells"), agreed to participate in the HAMP by entering into a Servicer Participation Agreement ("SPA") with Fannie Mae.  FAC ¶ 13 and its corresponding Exhibit B.

On or about, June 3, 2009 Plaintiffs, through their attorney, made a request for a modification of their loan to Defendant Wells to be processed through the HAMP.  FAC ¶ 14. Between the months of June 2009 and July 2009, Plaintiffs, and/or their representatives, were in regular communication with the home retention department of Defendant Wells to obtain status updates regarding the review and results of their application for a loan modification through the HAMP.  FAC ¶¶ 15-22.

---

[1] Defendants mistakenly refer to Paragraphs 13-14 of Plaintiffs' FAC as the location of Plaintiffs' request for "a free house".  In fact, no reference is made to Plaintiffs' damages, demands or Prayers until Plaintiffs' request for judgment on page 13 &14 of the FAC.  Specifically, the language Defendants refer to is at FAC 13:22-23.

1   Section 1(A) of the SAP, provides that, "Servicer shall perform the loan modification
2 and other foreclosure prevention services described in…(ii) the Program guidelines and
3 procedures issued by the Treasury, including without limitation, the net present value
4 assessment requirement of the Program (the "Program Guidelines")." FAC, Ex B.
5   The Program Guidelines, state, "To ensure that a borrower currently at risk of
6 foreclosure has the opportunity to apply for the HAMP, servicers should not proceed with a
7 foreclosure sale until the borrower has been evaluated for the program…" FAC, Ex. A, Page
8 14.
9   On June 29, 2009, Plaintiffs' representative spoke with Wells employee Erik (ID#
10 NXP) who confirmed the a scheduled foreclosure sale for June 30, 2009, would be postponed
11 till July 30, 2009, as a final determination of the HAMP review had not been completed. FAC
12 ¶ 20.  As of July 30, 2009, contrary to Defendants assertion in their MPA 3:7-9, Plaintiff had
13 received no notice, in writing or otherwise, of any final determination of their loan
14 modification request.
15   Between July 28, 2009 and July 30, 2009, Plaintiffs and/or their representatives were
16 told by multiple Wells employees that their modification request was still under review and
17 that pursuant to the HAMP guidelines, the upcoming foreclosure sale date should and would be
18 postponed again. FAC ¶¶ 21 & 22.  Despite these assertions, on July 30, 2009, Plaintiffs'
19 home was foreclosed upon by Wells.  Pursuant to a subsequent Unlawful Detainer action,
20 Plaintiffs moved out of their home on, or about, October 2009.
21   On September 9, 2009, Plaintiffs' filed this action in San Diego Superior Court.  Upon
22 revelation of the proper Wells Fargo entity responsible for the damages alleged in their
23 Complaint, Plaintiffs' filed their FAC on December 14, 2009.  On January 13, 2010,
24 Defendants removed this action to the U.S. District Court for the Southern District of
25 California.

### III. ARGUMENT

#### A. STANDARD OF REVIEW

When reviewing motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. *Escobido v. Countrywide Home Loans, Inc.* 2009 WL 4981618 (S.D. Cal. Dec. 15, 2009). Under Fed. R. Civ. P. 8(a)(2), a plaintiff is required only to set forth a "short and plain statement" of the claim showing that plaintiff is entitled to relief and giving the defendant fair notice of what the claim is and ground upon which it rests. The party bringing a 12(b)(6) motion has the burden to show that Rule 8(a)(2) has not been met. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3rd Cir. 1991).

The court's role at the 12(b)(6) stage is not to evaluate the strength or weakness of claims. *Jacobson v. Hughes Aircraft Co.* (9th Cir. 1997) 105 F.3d 1288, 1292. A Plaintiff's brief may always be used to "clarify allegations in her complaint whose meaning is unclear." *Pegram v. Herdrich* (2000) 530 U.S. 211, 230, fn.10. "New" facts in Plaintiff's opposition must be considered to determine if to grant leave to amend or to dismiss with or without prejudice. *Orion Tire Corp. v. Goodyear Tire & Rubber Co.* (9th Cir. 2001) 268 F.3d 1133, 1137.

The interpretation of a contract is a mixed question of law and fact and one that must be reviewed de novo. *County of Santa Clara v. Astra, USA, Inc.* (9th Cir. 2008) 540 F.3d 1094, 1101; *Klamath Water Users Protective Ass'n v. Patterson* (9th Cir. 1999) 204 F.3d 1206, 1210.

#### B. PLAINTIFFS MEET THE PREVAILING STANDARD USED TO DETERMINE WHETHER THEY ARE INTENDED THIRD PARTY BENEFICIARIES

Plaintiffs' do not contest that when a third party seeks to enforce rights under a contract, it must show that is an intended beneficiary of the contract. *See County of Santa Clara,* 588 F.3d 1237 at 1244. Defendants' rely heavily on *Escobido v. Countrywide Home Loans, Inc.* 2009 WL 4981618, when arguing that Plaintiffs are not an intended beneficiary of the contract. In

turn, *Escobido* relies heavily on the findings in *Klamath Water Users Protective Ass'n v. Patterson* (9th Cir. 2000) 204 F.3d 1206, as its authority for its decision in *Escobido*.

Both *Escobido & Klamath*, use the Restatement of Contracts when determining the prevailing standard regarding third-party beneficiaries. The Restatement on Contracts explains:

> (1)   Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and…(b) the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance. *Restatement (Second) of Contracts* § 302 (1979) ("Restatement"). *See Escobido* and *Klamath* 204 F.3d at 1211.

In *Escobido,* the court goes on to state that, "To sue as a third-party beneficiary of a contract, the third party must show that the contract reflect the express or implied intention of the parties to the contract to benefit the third party." (Quoting, *Klamath*, 204. Fd. At 1211). "One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him or her." *Id at 6.*

In *Escobido*, the court ultimately denied the plaintiffs claim as a third-party benefit based on two conclusions:  1) It reasoned that the contract did not show that the parties intended to grant qualified borrowers the right to enforce the Agreement due to the inclusion of language in the contract stating it "shall inure to the benefit of…the parties to the Agreement and their permitted successors-in-interest." *See* FAC, Ex. B § 11.E.; and 2) "a qualified borrower would not be reasonable in relying on the [contract] as manifesting an intention to confer a right on him or her because the [contract] does not *require* that [the loan servicer] modify eligible loans." *Id. at 6.*

Plaintiffs take exception to both of the *Escobedo* court's reasons.

**1.   A Single Express Recitation Regarding Interested Parties Is Not Sufficient In Determining Intent.**

In *County of Santa Clara v. Astra USA, Inc.* (9th Cir. 200) 540 F.3d 1094, the court cited *Klamath*, in its assertion that the "clear intent" hurdle cannot merely be satisfied by a contract's recitation of interested constituencies. *County of Santa Clara* at 1244, (quoting, *Klamath,* 204 F.3d. at 1212.) The *County of Santa Clara* court went on to reject the suggestion that the availability of a third party contract claim is conditioned on the contract's inclusion of a provision expressly granting the third party the right to sue. *Id* at 1244.

In making the determination as to the parties intent, the court must look to the contract's "text and purpose", the contract as a whole, weigh the circumstances of the transaction, which, when a contract is mandated by a federal statute, includes the "governing statute and its purpose." *Id.*at 1244. *See also Rendleman v. Bowen,* (9th Cir. 1988) 860 F.2d 1537, 1541-42 and *Sec'y of State for Def. v. Trimble Navigation Ltd.*, (4th Cir. 2007) 484 F.3d 700, 706. In addition, the court should interpret every part of a written contract with reference to the whole and give terms their ordinary meaning unless contrary intent appears. *County of Santa Clara* at 1245. *See Klamath,* 204 F.3d at 1210.

In the instant case, despite the contractual language relied upon by the *Escobedo* court with regard to the contract inuring to the benefit of the parties, a full reading of the contract as a whole including the text and purpose, and purpose of the underlying government statute, show clear contrary intent to grant the beneficiaries of the SPA enforceable rights.

    a.   <u>The Text & Purpose of the Contract Shows Intent to Confer Enforceable Rights On A Third Party</u>

Taken as a whole, including all documents referred to in the SPA, a reading of the SPA provides no real benefit to anyone other than the homeowners it is designed to provide services for. The consideration the loan servicer is entitled to for participating in the HAMP is $1,000 for each completed modification. In the event other circumstances apply the servicer <u>may</u> be entitled to an additional $3,500 over the subsequent three years. FAC, Ex. A, Pages 23-24. There simply is no reasonable argument that Defendants or any loan servicer can make to claim that they derive any real benefit from entering into the HAMP, especially considering the expense and resources it must take to administer the HAMP services. Likewise, the funds to

1  implement, regulate and administer the program as well as the monies to be paid out to the
2  servicers and to the investors of the loans all comes from taxpayer's money, funneled through
3  Fannie Mae.  One only need turn on the nightly news or read their local newspaper to know
4  that the strain on Fannie Mae as well as taxpayer resources is at a maximum threshold.
5  Combined with language in the recital that the HAMP was established pursuant to the
6  Emergency Economic Stabilization Act of 2008, there can be no reasonable interpretation of
7  the HAMP and thus the SPA but that its sole purpose is to benefit American homeowners as a
8  whole and specifically, those borrowers whose loans are serviced by contractually bound loan
9  servicers.  In this instance, Wells entered into an SPA and agreed to perform all the contractual
10  obligations for <u>all</u> loans it serviced, including Plaintiffs.

11       b.  <u>The Purpose Of The Underlying Government Statute Is To Benefit</u>
12          <u>Homeowners</u>

13     As stated above, the Recitals of the SPA state that the HAMP and thus the SPA were
14  established pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of
15  2008.  Section 2 of the Act, clearly sets forth the Acts purposes:
16     The Purposes of this Act are-
17     …2(A) protects home values, college funds, retirement accounts, and life
18     savings;  2(B) preserves homeownership and promotes jobs and economic
19     growth….
20     Section 109 goes on to provide:
21     -To the extent that the Secretary acquires mortgages, mortgage backed
22     securities, and other assets secured by residential real estate, including
23     multifamily housing, the Secretary shall implement a plan that seeks to
24     maximize assistance for homeowners and use the authority of the
25     Secretary to encourage the servicers of the underlying mortgages,
26     considering net present value to the taxpayer, to take advantage of the
27     HOPE for Homeowners Program under section 257of the National
28     Housing Act or other available programs to minimize foreclosures.  In

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
12

addition, the Secretary may use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures. (See: http://frwebgate.access.gpo.gov/cgi-bin/getdoc.cgi?dbname=110_cong_bills&docid=f:h1424enr.txt.pdf)

Once again a reading of the purpose of the governing statute shows that the intention of the program is to benefit American homeowners by preserving homeownership and maximizing assistance to avoid foreclosures.

Taken as a whole, the SPA and its governing statute clearly show a intention to benefit Plaintiffs, contrary to the finding in *Escobedo*.

### 2. A Qualified Borrower Is Reasonable In Relying on the Agreement As Manifesting An Intention To Confer A Right On Him or Her

In *Escobedo,* the court asserted that the threshold for reasonable reliance was not met because the SPA did not *require* that Countrywide modify eligible loans and therefore no borrower could reasonably rely on the contract to expect a modification of their loan. *Escobedo,* 2009 WL 4981618 at 6. The court is incorrect in the factual basis for their ruling.

Once again, the SPA requires that Defendant Wells follow the Program Guidelines as written. The SPA itself reads in pertinent part, "Servicer shall (emphasis added) perform the Services for all mortgage loans its services." FAC, Ex. B, § 2A. Likewise, a reading of the Program Guidelines shows it littered with imperative language. "All loans that meet the HAMP eligibility criteria and are either deemed to be in imminent default or 60 or more days delinquent must (emphasis added) be evaluated using a standardized NPV test… If the NPV result for the modification scenario is greater than the NPV result for no modification, the result is deemed "positive" and the servicer MUST (emphasis in original) offer the modification." FAC, Ex. A, Page 4. In fact, contrary to the *Escobedo* ruling, if after performing their evaluation pursuant to Program Guidelines, a loan meets the program criteria the servicer MUST modify a borrower's loan.

The *Escobedo* court again justifies their conclusion that a servicer is not required to modify a loan by referring to Program Guidelines which state, "Participating servicers are

1   required to consider all eligible loans under the program guidelines unless prohibited by the
2   rules of the applicable pooling and service agreement ("PSA") and/or other investor servicing
3   agreements". *Escobedo* 2009 WL 4981618 at 6.  However, the court fails to take into
4   consideration additional language in both the SPA and the Program Guidelines which states,
5   "Servicer shall use reasonable efforts to remove all prohibitions or impediments to its
6   authority, and use reasonable efforts to obtain all third party consents and waivers that are
7   required, but contract or law, in order to effectuate any modification of a mortgage loan under
8   the Program." FAC, Ex. B, § 2.A.
9       However, even accepting the *Escobedo* court's interpretation of the SPA requirements,
10  unlike the plaintiffs in *Escobido,* Plaintiffs in this instance are not claiming that Wells had a
11  duty or obligation to provide them with a loan modification and as such that should not be the
12  standard to hold them to with regards to their reasonable expectations.
13      When determining whether or not Plaintiffs or any other qualified borrower is
14  reasonable in relying on the SPA, the question should not be whether they borrower expected
15  a modification under the SPA, but rather should the borrower expect the servicer to apply all
16  the tests and good faith obligations when reviewing them for a modification.  In other words,
17  despite the ultimate outcome, did the servicer properly evaluate and/or otherwise follow the
18  Program Guidelines in making the ultimate determination.
19      Given that fact that the HAMP is extremely well publicized by the government and that
20  each servicer's "voluntary" participation, including Wells', is flaunted by them in public
21  forums and on accessible locations such as their website,(see:
22  https://www.wellsfargo.com/mortgage/account/stabilityplan) in order to gain public support, a
23  borrower is absolutely reasonable is relying on their servicer's commitment and contractual
24  obligation to follow the terms of the SPA they signed.
25      In the case at hand, despite the fact that the Program Guidelines specifically state that
26  the servicer must perform the services for all mortgage loans it services, FAC, Ex. B, § 2A,
27  Defendants freely admit that they did not review Plaintiffs under the HAMP. MPA 3:5-6.
28  Despite the fact that the Program Guidelines clearly state that all foreclosure proceedings

1  should be suspended until the borrower has been evaluated for the program, Wells still
2  foreclosed on Plaintiffs' home, even though they were still under the evaluation process.
3  FAC, ¶¶ 21-23.
4      Based on the authority cited above, as well as the distinguishing factors between this
5  matter and that of *Escobedo* the court should find that Plaintiffs were, in fact, intended third-
6  party beneficiaries of the SPA.

    **C.    THE FORUM SELECTION CLAUSE SHOULD BE DISREGARDED DUE TO FORUM NON-CONVENEINS**

9      The standard for escaping from a forum selection clause has been long standing.  In *The
10  Breman v. Zapata Off-Shore Co.*, (1972) 401 U.S. 1, 92 S.Ct. 1907, 32 L.Ed. 2d 513, the
11  Supreme Court held that a forum-selection clause may be disregarded upon a showing that,
12  "trial will be so gravely difficult and inconvenient that [the party seeking a different forum]
13  will for all practical purposes be deprived of his day in court."  *The Breman,* 707 U.S. at 18.
14      In the case at hand, there can be no argument that enforcement of the forum selection
15  clause contained in the SPA, in essence removing this action to Federal Courts within the
16  District of Columbia, would be so gravely inconvenient to Plaintiffs that they would be unable
17  to bring or continue this action.
18      In contrast, there simply is no inconvenience to Defendants by leaving the matter where
19  it was originally filed. Defendants cite *Net2Phone v. Superior Court,* (2003) 109 Cal.App.4th
20  583[2] and *Coastal Steel Corp v. Tilghman Wheelabrator Ltd.,* (3rd Cir., 1983) 709 F.2d 190, to
21  support their assertion that "…forum selection provisions are presumed valid" MPA 9:18-19.
22  However, Defendants conveniently fail to leave out the exceptions to that presumption.  In
23  referring to *Breman,* the *Coastal Steel Corp* court established that the validity presumption of
24  forum selection provisions may be overcome upon a showing that, "…(3) enforcement would
25  in the particular circumstances of the case result in litigation in a jurisdiction so seriously
26  inconvenient as to be unreasonable." *Id.* at 202.

---

[2] Defendants readily admit and concede that the controlling law in this matter is Federal law. MPA 9:13-17.  Despite that fact they use the California State case of *Net2Phone* as precedent authority.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
15

1    Plaintiffs in this matter are an average American family with jobs and familial
2 obligations.  As stated above, causing this matter to be removed to the District of Columbia
3 would be of such inconvenience, both practically and financially, to Plaintiffs that it would
4 prevent them from them bringing this action at all.  It is likely that this is the purposeful
5 intention of Defendants, as they would suffer no inconvenience or disadvantage whatsoever,
6 should this matter be heard in its current venue.  In fact, Defendants argue that when
7 determining whether a forum selection clause in "so seriously inconvenient as to be
8 unreasonable" the court should look to the convenience of the parties to the contract, not to the
9 convenience of third parties who claim to be intended beneficiaries.  MPA 9:26-27

10   However, when applying that law to this case, Defendants merely claim that, "the
11 District of Columbia is convenient for Fannie Mae…" MPA, 10: 1-2, who is not even a party
12 to this action.  At no time do Defendants make any claim, nor can they, that either of them are
13 inconvenienced by the non-enforcement of the forum selection clause.  Both Defendants are
14 national level corporations registered and doing business in virtually every state in this country.
15 They have a presence and regularly enter into legal actions in California.  In voiding the forum
16 selection clause Defendants would not be subject to any change in choice of law, nor would
17 they suffer additional expense in presenting potential witnesses, as the representatives whom
18 may be called by Plaintiffs in this action were not located in the District of Columbia, but
19 rather were scattered at various bank divisions around the country.

20   For the reasons stated herein, Plaintiffs request that this Court to deny Defendants'
21 Motion to Dismiss pursuant to rule 12(b)(3).

22   **D.    PLAINTIFFS HAVE ALREADY MADE A PROPER TENDER**

23   Defendants argue that Plaintiffs' sole reasoning for alleging the trustee's sale was
24 invalid is based upon the oral representations of representatives of Defendant Wells.  MPA
25 10:25-27.  While Plaintiffs FAC does contain a cause of action for Breach of Oral contract (as
26 seen below, Plaintiffs agree to dismiss this cause of action), Plaintiffs' maintain allegations that
27 the foreclosure sale is invalid, not pursuant to failed oral representations, but rather as a result
28 of Defendant Wells failure to follow the contractual obligations of the SPA and the HAMP

1  Guidelines.  FAC, ¶¶ 1-29.  In addition to Plantiffs' claim for breach of contract as an intended
2  third party beneficiary, Plaintiffs maintain that Wells failure to comply with the SPA is
3  tantamount to unfair business practices and fraud.
4       In such instances, when reviewing tender requirements the Court should look to *Azzini*
5  *v. Countrywide Home Loans* (S.D. Cal . Dec. 29, 2009) U.S. Dist. LEXIS 120599 for authority.
6       In *Azzini,* the Court deals with a similar situation, wherein the alleged causation leading
7  to the disputed foreclosure sale was not an irregularity in the foreclosure sale, but rather a host
8  of allegedly fraudulent and unlawful business practices relating to the loan itself.  *Id.* at 13.  As
9  such, the *Azzini*, court distinguished their situation from the well regarded rule that, "A valid
10 and viable tender of payment of the indebtedness owing is essential to an action to cancel a
11 voidable sale under a deed of trust." *Id.* at 12; see also, *Karlsen v. American Sav. & Loan Assn.*
12 (1971) 15 Cal.App.3d 112, 117.
13      As in *Azzini*, Plaintiffs in this action do not seek to set aside a foreclosure sale because
14 of irregular or unlawful sale procedures, but because of fraudulent and unlawful business
15 practices related to Defendant Wells' compliance with the HAMP, the SPA and the Program
16 Guidelines.  Following *Azzini*, no tender or pleading of tender should be required by Plaintiffs.
17     **E.**    **ORAL CONTRACT**
18      Plaintiffs agree to abandon and dismiss their cause of action for Breach of Oral
19 Contract.
20     **F.**    **PLAINTIFFS HAVE PROPERLY PLED THEIR CAUSES OF ACTION**
21            **FOR INTENTIONAL AND NEGLIGENT MISREPRESENTATION**
22     **1.**    **Plaintiffs' Pleadings Meet The Requisite Particularity**
23      Defendants argue that Plaintiffs have failed to plead their fraud causes of action with
24 particularity under *Rule 9* of the *Federal Rules of Civil Procedure*.  MPA 14:6-27 & 15:1-16.
25 In doing so Defendants refer to Plaintiffs single plead conversation, which they admits meets
26 the requisite particularity.  MPA 15:14-15.  Defendants further refer to other conversations
27 plead by Plaintiffs without particularity.  MPA 15:21-25.  The question then arises, must
28 Plaintiffs plead with particularity each instance of a string of related fraudulent occurances?

It has been established that the requirements of Rule 9(b) may be relaxed to permit discovery in a limited class of corporate fraud cases where the evidence of fraud is within a defendant's exclusive possession. *US. Ex. Rel. Lee v. SmithKline Beecham, Inc.* (9th Cir. 2001) 245 F.3d 1048, 1052.  See also; *Cooper v. Pickett*, (9th Cir. 1997) 137 F.3d 616, 627 (where complaint asserting claims of improper revenue recognition identified (i) some of the specific customers defrauded, (ii) the type of conduct at issue, (iii) the general time frame in which the conduct occurred, & (iv) why the conduct was fraudulent.  It was "not fatal to the complaint that it [did] not describe in detail a single specific transaction…by customer, amount & precise method.")  In the matter at hand, Wells keeps computerized notated records of their employees conversations.  In addition, the court may take judicial notice that at the outset of each conversation with a Wells loan modification representative or supervisor an advisory is given that the call may be recorded.  In either case, Wells certainly has possession of the evidence pertaining to Plaintiffs' fraud causes of action.

Plaintiff seeks leave to amend from the court to describe said conversations with further particularity.   For the reasons stated above, Plaintiffs have met the pleading requirements required for their fraud causes of action, but in any case, request leave to amend to provide additional information so that defendant can prepare an adequate answer.

### 2. **Plaintiffs' Did And Can Allege Justifiable Reliance**

Defendants contend that Plaintiffs are unable to show justifiable reliance because the promises made by Wells' employee were never put in writing.  However, by Defendants' own admission that requirement applies only to an agreement regarding an interest in real property. MPA 16:20-24.  However, in the instant case, the promise on which Plaintiffs and/or Plaintiffs counsel relied upon was not the overture of promising to suspend the foreclosure sale, but rather the both stated and inferred promise that Wells would abide by and adhere to their obligations under the SPA and the HAMP's Guidelines, which includes suspending all foreclosures for borrowers under evaluation through HAMP.  FAC, Ex. A, Page 14.

1    **3.      Plaintiffs' Did and Can Allege Justifiable Reliance**

2    Defendants argue that the actual cause of foreclosure was Plaintiffs failure to make

3    their mortgage payments.  MPA 18:14-26.  Defendants fail to take into consideration that had

4    Plaintiffs been property reviewed for a loan modification and provided said modification

5    pursuant to Defendant Wells contractual obligations, their house would not have been

6    foreclosed upon at all and Plaintiffs would have been made current on their loan through the

7    HAMP.

8    **4.      In The Alternative The Court Should Grant Plaintiffs Leave To Amend**

9    As general procedure, leave to amend should be freely granted "when justice so

10   requires".  *Fed. R. Civ. P.* 15(a).  A district courts discretion to deny leave to amend is not

11   absolute.  *US. Ex. Re. Lee v. SmithKline Beecham* (9th Cir. 2001) 245 F.3d 1048, 1052.  Leave

12   to amend should be granted unless the district court "determines that the pleading could not

13   possibly be cured by the allegation of other facts".  *Id.*

14   In the matter at hand, should the court feel that any of Plaintiffs fraud cause of action

15   do not meet the pleading requirements, Plaintiffs would be able to amend the pleadings to

16   provide additional information and facts, and therefore requests the court allow them leave to

17   amend.

18   **G.    PLAINTIFFS' CAUSE OF ACTION FOR QUIET TITLE SHOULD NOT
19          BE DISMISSED**

20   Defendants once again base their argument that Plaintiffs' quiet title action must fail on

21   their contentions that an alleged oral agreement or promise to postpone foreclosure does not

22   render a trustee sale voidable and that Plaintiffs do not and cannot allege tender.  MPA 19: 7-

23   13.  For reasons discussed above, neither of those arguments control in this action and

24   therefore Plaintiffs' cause of action to quiet title should not be dismissed.

25   **H.    DECLARATORY RELIEF**

26   Plaintiffs agree to abandon and dismiss their cause of action for Declaratory Relief.

27

28   **I.     INJUNCTIVE RELIEF**

1  Plaintiffs agree to abandon and dismiss their cause of action for Injunctive Relief.

### V.  CONCLUSION

For the reasons stated herein, Plaintiffs request the Court denies Defendants' Motion to Dismiss and their Motion to remove this matter to the U.S. District Court for the District of Columbia.  In the alternative, should the Court decide to grant Defendants' Motion or any part of it, Plaintiff requests the Court grant Plaintiffs leave to amend.

Dated:  February 25, 2010

                                LUGASH LAW CENTER

                                By:   /s/ Spencer B. Lugash
                                     Attorney for Plaintiffs
                                     DARIO D. VILLA and MARIA THERESA O. VILLA
                                Email: sl@lugashlawcenter.com